# United States District Court
## Northern District of Alabama
### Western Division

00 SEP 21  PM 4: 18

U.S. DISTRICT COURT
N.D. OF ALABAMA

Priscilla Townsend,                    ]
                                       ]
    Plaintiff(s),              ]
                                       ]
vs.                                    ]     CV-99-N-1507-W
                                       ]
Flagstar Enterprises, et al.,          ]
                                       ]
    Defendant(s).              ]



**ENTERED**

SEP 2 1 2000

### Memorandum of Opinion

## I.   Introduction.

In this action properly before the court pursuant to 28 U.S.C. § 1331, the plaintiff,

Priscilla Townsend ("Townsend"), alleges that she suffered racial and sexual

discrimination, hostile environment sexual and racial discrimination, quid pro quo sexual

harassment, and illegal retaliation in violation of Title VII of the Civil Rights Act of 1964, as

amended, 42 U.S.C. § 2000e *et seq.,* and 42 U.S.C. § 1981, while an employee with the

defendant corporation Flagstar Enterprises Inc/ Hardee's Food Systems, Inc. (collectively

"Hardee's"). Plaintiff also asserts various state law claims.[1]

The matter is presently before the court on defendants' motion for partial summary

judgment, filed May 15, 2000.[2] In particular, the defendants contend that they are entitled

---

[1] On November 3, 1999, the plaintiff dismissed with prejudice her § 1983 claims against all defendants. (Doc. No. 12). Additionally, Hardee's concedes that for summary judgment purposes, a genuine issue of material fact exists as to the plaintiff's sexual harassment retaliation claim.

[2] In a related matter, the court has for consideration the plaintiff's motion to strike portion of Randy Hart's Declaration (Doc. No. 39), filed June 5, 2000. The court will consider this matter contemporaneously with the motion for summary judgment and will disregard any portions of the affidavit not properly before the court on summary judgment.



to summary judgment as to all the plaintiff's claims, with the exception of the retaliation claim. The issues have been fully briefed by both parties and are now ripe for decision. Upon due consideration, the motion will be granted in all respects.

## II.   Statement of Facts.[3]

Viewed in the light most favorable to the plaintiff, the evidence of record suggests the following facts: Ms. Townsend began working for Hardee's at the Skyland Boulevard store in Tuscaloosa, Alabama on April 16, 1998. She was hired by Dennis Burd ("Burd"), a member of the store's management. She asserts that when she was hired, she did not receive an employee handbook and was not given any new employee orientation. Instead, she only remembers "just hav[ing] a bunch of papers to sign." (Def. Ex. A p. 248).

Townsend claims that she was subjected to a racially hostile environment soon after she was hired. On one occasion, she heard Burd use the word "nigger" while on the telephone. She also claims she once heard Burd say about a former employee, that "[he] fired that nigger." As for comments made directly to her, Townsend maintains that on separate occasions Burd made statements such as "nigger, get over here" and "nigger, you better get into the store." Furthermore, she alleges that she heard Burd refer to African-Americans as "gangster people," "ghetto people," "drug dealers" and "monkeys," and that he even went as far as to call a black customer a "big, fat, stupid, nigger." All of the foregoing incidents occurred during a period of approximately two weeks.

---

[3] In developing the statement of facts in this opinion, the court considered those facts claimed to be undisputed by the parties, the parties' respective responses to those claims, and the court's own examination of the evidentiary record. These are the "facts" for summary judgment purposes only. They may not be the actual facts. *Cox v. Administrator U.S. Steel & Carnegie Pension Fund,* 17 F.3d 1386, 1400 (11th Cir. 1994), *cert denied, USX Corp. v. Cox,* 114 S. Ct. 900 (1995).

2

In addition to a racially hostile environment, the plaintiff contends that Burd sexually harassed her. As for sexually related comments, Townsend claims that Burd asked her if black people gave "blowjobs" and whether black women liked to have men eat their p\*\*\*y like white women did. He also commented to Townsend about her "soft breasts." She further adds that every morning she came to work, Burd told her that she "looked pretty" and "smelled good."

According to Townsend, Burd's sexual misconduct was not limited to verbal remarks. She asserts that on one occasion, while working on the "front line," Burd intentionally touched her breasts, licked his lips, and then brushed his private parts against her. Townsend also testified that on another occasion in the storage room Burd brushed his crotch across her rear end. Also, she complains that Burd once grabbed a towel out of her back pocket. Plaintiff further describes "a couple of times" where Burd would look at her and make facial gestures such as licking his lips and rolling his tongue, and "four or five" times where he winked at her. She also contends that on one occasion, Burd told her and some other female employees that if they would do what he wanted them to do, they could get what they wanted. According to Townsend, the final incident occurred on April 28, 1998, when Burd kicked her rear end and then slapped her rear claiming he was trying to get flour off of her pants. Townsend responded by slapping Burd on his head and telling him never to do that again because she didn't "play like that." (Def. Ex. A. pp. 89-91).

On the day of the kicking incident, after Burd left the store, Townsend asked Denise Croom ("Croom"), manager of the Skyland Boulevard store, who she needed to complain to about the incident. Ms. Croom gave Townsend the name and number of Bonnie Corbett

3

("Corbett"), the Human Resources Manager. The next day, April 29, 2000, Townsend called Corbett and told her what Burd had done. Corbett told her that she had to do an investigation and would get back in touch with her.

After the kicking incident, Townsend never worked with Burd again. On or around April 30, 1998, Townsend's attorney at the time notified Corbett that Townsend wanted to transfer to another store. After initially requesting the Northport store, the plaintiff changed her mind and requested the Alberta City store. In response to her request, Townsend was immediately transferred to the Alberta City store. However, the plaintiff's stint at this store was short-lived. By the end of May 1998, Townsend was no longer working for Hardee's at any of its stores.

## III. Summary Judgment Standard.

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The movants can meet this burden by presenting evidence showing that there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in

4

support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. *Celotex*, 477 U.S. at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to

5

require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52; *see also Bill Johnson's Restaurants, Inc. v. N.L.R.B.*, 461 U.S. 731, 745 n.11(1983). However, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249 (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the non-movants is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255. The non-movant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## IV. Discussion.

### A. Sexual and Racial Harassment.

The courts recognize two types of sexual harassment cases: (1) "quid pro quo," which are "based on threats which are carried out," or (2) hostile environment which concern "bothersome attentions or sexual remarks that are sufficiently severe or pervasive to create a hostile work environment." *Gupta v. Florida Board of Regents, et al.*, 212 F.3d

6

571, 582 (11th Cir. 2000) *citing Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998). There is some evidence that Burd engaged in quid pro quo sexual harassment; i.e., the plaintiff and others could receive favors in return for favors. There is, however, no evidence of record that would support a quid pro quo racial harassment claim.[4]

In supervisor harassment cases, there are two principal grounds upon which employer liability may be founded. First, an employer will be directly liable when it either intended, or negligently allowed, the harassing conduct to occur. *Dees v. Johnson Controls, Inc.*, 168 F.3d 417, 421 (11th Cir. 1999). "The harassment can be ascribed to the employer's negligence when the employer knew or should have known about the harassment and failed to take remedial action." *Id.* Also, an employer may be subject to vicarious liability when the harassment committed by a supervisor results in a tangible employment action (such as termination or unwanted reassignment) against the victimized employee. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998). In cases where there is no tangible employment impact on the plaintiff, the employer may escape liability by proving a two-part affirmative defense. *See Faragher*, 524 U.S. at 807; *Burlington Indus.*, 524 U.S. at 765.

## 1.   Direct Liability.

The plaintiff initially asserts that Hardee's is directly liable for Burd's conduct because it knew or should have known that he was sexually and racially harassing employees, and failed to take remedial action. *See Dees*, 168 F.3d at 420. There is, however,

---

[4] The court has assumed, without deciding, that a claim of quid pro quo racial harassment could, in some circumstances, be viable. Because there is no evidence that would suggest such circumstances here, the court will not address that claim. It is not entirely clear that Townsend even makes that claim. More likely, the suggestion of a claim of quid pro quo racial harassment results from failure to plaintiff's counsel to clearly delineate the parameters of her claims.

no evidence that suggests that anyone in the defendant's "higher management" knew that Townsend had any complaint about Burd before she called Corbett on April 29, 1998. It is undisputed that Townsend suffered no harassment, either racial or sexual, after she called Corbett. Since there is no question of fact regarding the defendant's lack of actual knowledge of the claimed harassment, the plaintiff's direct liability claim must be founded, if at all, on Hardee's constructive knowledge of Burd's conduct. *See Allen v. Tyson Foods*, 121 F.3d 642, 647 (11th Cir. 1997).

The issue of an employer's constructive knowledge is one of fact to be determined by looking to the totality of the circumstances. *Id.* However, the question of the employer's constructive knowledge must not be confused with the abusive environment itself. *Faragher v. City of Boca Raton*, 111 F.3d 1530, 1538 *rev'd. on other grounds,* 524 U.S. 775. When conduct is both pervasive and severe enough to create an abusive work environment, it does not necessarily follow that the employer should always be charged with knowledge of the conduct. *Id.* In the Eleventh Circuit, courts are enjoined to look to several factors to determine when the employer should be charged with constructive notice of harassing conduct: (1) the remoteness of the location of the harassment as compared to the location of management; (2) whether the harassment conduct was intermittent, occurring over an extended period of time; (3) whether the victims were employed on a part-time or full time basis; and (4) whether there were only a few, discrete instances of harassment. *Allen*, 121 F.3d at 647.

In *Allen*, the Court determined that a question of fact existed as to whether the employer, Tyson Foods, had constructive knowledge of the alleged harassing behavior. *Id.*

8

at 647. There, the plaintiff alleged that her supervisor, Wood, wrote her sexually explicit notes, solicited sexual favors from her, and improperly touched her on one occasion. Plaintiff offered further evidence that Wood had sent similar notes to other employees and often told sexually explicit jokes to employees at the plant. In addition, the plaintiff produced evidence that the plant "was engulfed by an atmosphere of improper sexuality." *Id.* at 645. The evidence presented showed that employees, including supervisors, "[e]ngaged in sexual intercourse at the plant, that sexually graphic jokes were often told throughout the plant, that vulgar and sexually demeaning language was engaged in, that employees groped one another's breast and genitalia, that employees exhibited their genitalia and buttocks, and that employees used various chicken parts to mimic sexual organs and activities." *Id.*

According to Townsend, Hardee's had notice of racial and sexual harassment on the part of Burd prior to her employment. In particular, she contends that complaints of both racial and sexual harassment were lodged against Burd to appropriate management personnel at Hardee's before she went to work there. As for prior complaints of racial harassment, the plaintiff asserts that two Hardee's employees, Greg and Levar Butler, told a Hardee's general manager that while they were employed at Ryan's restaurant, where Burd was also employed, he made racially derogatory comments in the presence of African-American employees. In addition, Fred Garley, assistant manager at the Skyland Boulevard store, said that Burd once told him that he "was never prejudiced 'till [he] moved to the South.'" (Pl. Ex. B. p. 18-19). Garley also stated that various other employees had

9

complained to him that Burd was prejudiced and that a regional manager had told him that there might be a problem with Burd. (Pl. Ex. B. p. 16, 72-73, 98-99).

As for prior complaints of sexual harassment, the Butlers also informed Clifton that Burd had sexually harassed female employees while working at Ryan's and that he had made sexually derogatory remarks directly to them. As for sexually related complaints against Burd while he was with Hardee's, employee Kamilah Wilson ("Wilson") testified that she informed the general manager of the Alberta City store, Clifton, on at least two occasions that she did not think Burd was a good candidate for management. Moreover, Wilson states that she told Clifton that Burd had made sexually related remarks to her and other female employees. (Pl. Ex. A. p. 22).

Considering all the circumstances, the court is satisfied there is no genuine issue of issue of material fact as to whether Hardee's knew or should have known about the alleged harassment. Examining the actual conduct suffered by Townsend, the alleged incidents are not of such a degree that Hardee's can be charged with constructive notice of them. First, considering the location of the harassment, there is no evidence to suggest that any Hardee's management official other than Burd, such as the general manager or district manager, was present in the restaurant at the time of the incidents. In fact, most of the events occurred when only Burd and Townsend were present. Also, it is noteworthy that the incidents all occurred over a period of only two weeks, a period that included days when Burd and Townsend did not work the same shifts.[5]

---

[5] The kicking incident cannot be characterized as an event that should have put Hardee's on notice, as they received prompt notice of the incident, and by transferring Townsend in accord with request, effectively addressed the complaints.

10

However, in direct liability cases, the examination does not rest solely on what the plaintiff actually suffered. *See Allen*, 121 F.3d at 646 (court took into account the sexual atmosphere which permeated the workplace); *Dees*, 168 F.3d at 422 (court specifically noted that similar sexual harassment complaints had been made to Human Resources by other employees before plaintiff). Nevertheless, a question of fact still does not exist. The allegations concerning racist and sexual statements made by Burd while at Ryan's suffer from two weaknesses. First, there is substantial reason to question whether unsubstantiated charges of harassment against a supervisor while employed by a different employer are sufficient to place a current employer on notice of harassing conduct by the same supervisor. Moreover, the statements of the Butler brothers to Hardee's officials were quite general in nature and lacking specificity.

The Eleventh Circuit's recent opinion in *Madray v. Publix Super Markets, Inc.*, 208 F.3d 1290 (11th Cir. 2000) provides the court with significant guidance on the question of notice.[6] In *Madray*, the plaintiffs asserted that their complaints to various mid-level managers, prior to their meeting with the District Manager, served as notice to their employer, Publix, of their supervisor's harassing behavior. Disagreeing, the Court concluded, upon examining the context in which such complaints were made, the mid-level managers "could not reasonably have been expected to act to address the plaintiffs' complaints." *Id.* at 1300.[7]

---

[6] The court recognizes that *Madray* specifically dealt with notice in a vicarious liability situation. Nevertheless, its discussion regarding effective notice is instructive in direct liability cases as well.

[7] The court referred to its prior holding in *Coates v. Sundor Brands*, 164 F.3d 1361, 1365 (11th Cir. 1999) (per curiam), in which it concluded that an employer did not have notice of harassment requiring attention when an employee merely presented a harassing note to her supervisor, but failed to indicate that the note

11

For instance, one plaintiff contended that she had commented to an assistant manager that the supervisor "made [plaintiff] sick." However, because that comment did not discuss the nature of the offending behavior, the court considered it an informal and general complaint that could not have been expected to invoke corrective action. *Id.* A similar complaint was found to concern a "singular incident" and did not indicate that the supervisor's behavior constituted an on-going pattern of inappropriate conduct. *Id.* As for an assistant manager who knew about two incidents of inappropriate conduct on the part of the supervisor, such knowledge was "not sufficient to indicate [the assistant manager] should have known [the supervisor] was engaging in a consistent pattern of harassment towards [the plaintiff] or to create a reasonable expectancy that he would take corrective action." *Id.* at 1301. Concluding that Publix could not be considered to have been placed on notice, the court stated that "[n]either plaintiff fully explained the full dimensions of their harassment by [the supervisor] to the mid-level managers or approached these mid-level managers in a professional capacity to request assistance with correcting [the supervisor's] behavior." *Madray*, 208 F.3d at 1301.

The statements and complaints that Townsend relies upon in support of her constructive notice argument suffer from some of the same deficiencies found in *Madray*. Garley's comments concerning Burd's statement that he wasn't a racist before moving to the South and that other employees had called Burd a racist do not describe the extent or

"represented a problem about which she was concerned or that required [the manager's] immediate attention," or "that the note was only the latest in an on-going pattern of sexually harassing behavior," and "the primary purpose for seeding out [the manager] was to discuss not the harassment," but other matters. *Madray*, 208 F.3d at 1300.

12

precise nature of his behavior, nor do they indicate a pattern of harassment. Also, Wilson's statement questioning Burd's management capablities does not disclose the extent or nature of Burd's behavior towards her. Thus, like the "made me sick" comment in *Madray*, Hardee's manager Clifton could not have been expected to take corrective action on the basis of these general complaints. As for Wilson's complaint that Burd had made sexual advances toward her and others, it does not describe the nature of the incidents. Nor does it indicate that Hardee's should have known Burd was engaging in a consistent pattern of harassment towards female employees. These circumstances compel the conclusion that Hardee's officials could not reasonably have been expected to address the plaintiffs' complaints.[8]

Moreover, unlike the situation in *Allen*, there is nothing to suggest that the work environment at Hardee's was permeated with sex or racism. The plaintiff has failed to present any evidence of conduct, language, or overall mood that would lead a reasonable decision maker to the conclusion that Hardee's was engulfed by an atmosphere of sexuality or that generally the work conditions there were particularly unusual. Additionally, in contrast to *Dees,* Townsend had not previously complained of mistreatment and there is no indication that Hardee's officials had made remarks concerning Burd's prior behavior.

Viewing all the circumstances in a light most favorable to Townsend, the court is convinced there was nothing in the complaints made to Hardee's officials prior to her

---

[8] The court has some question whether Clifton and Garley are, for purposes of constructive notice, agents of Hardee's. However, for summary judgment purposes, the court has treated them as though they were.

13

employment, or the general working environment at the Skyland Boulevard location, that

could have placed Hardee's on notice of Burd's behavior.

### 2. **Vicarious Liability.**

The plaintiff maintains that even if Hardee's is not directly liable for the harassment

suffered by Townsend, it is vicariously liable for Burd's conduct.[9] In *Mendoza v. Borden*,

195 F.3d 1238 (11th Cir. 1999), the Eleventh Circuit offered the following standard:

> To establish a hostile-environment sexual-harassment claim under Title VII
> based on harassment by a supervisor, an employee must show: (1) that he or
> she belongs to a protected group; (2) that the employee has been subject to
> unwelcome sexual harassment, such as sexual advances, requests for sexual
> favors, and other conduct of a sexual nature; (3) that the harassment must
> have been based on the sex of the employee; (4) that the harassment was
> sufficiently severe or pervasive to alter the terms and conditions of
> employment and create a discriminatorily abusive working environment; and
> (5) a basis for holding the employer liable.
>
> . . .
>
> Establishing that harassing conduct was sufficiently severe or pervasive to
> alter an employee's terms or conditions of employment includes a subjective
> and an objective component. The employee must "subjectively perceive" the
> harassment as sufficiently severe and pervasive to alter the terms or
> conditions of employment, and this subjective perception must be objectively
> reasonable. Id. The environment must be one that "a reasonable person
> would find hostile or abusive" and that 'the victim ... subjectively perceive[s]
> ... to be abusive.' Furthermore, 'the objective severity of harassment should
> be judged from the perspective of a reasonable person in the plaintiff's
> position, considering 'all the circumstances.'
>
> The objective component of this analysis is somewhat fact intensive.
> Nevertheless, the Supreme Court and this Court have identified the following

---

[9] If the alleged harassment results in the plaintiff suffering a "tangible job detriment," then the employer
is vicariously liable. However, that is not the case here. While an unwanted job transfer might be considered
detrimental, where, as here, the post-harassment transfer occurred at the specific request of the plaintiff and she
was essentially allowed to choose the place where she would be transferred, that transfer does qualify as tangible
job detriment. *See Dees*, 168 F.3d at 422.

14

four factors that should be considered in determining whether harassment objectively altered an employee's terms or conditions of employment: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance. The courts should examine the conduct in context, not as isolated acts, and determine under the totality of the circumstances whether the harassing conduct is sufficiently severe or pervasive to alter the terms or conditions of the plaintiff's employment and create a hostile or abusive working environment.

*Id.* at 1245-1246 (citations omitted).

Furthermore, in *Faragher* and *Ellerth,* the Supreme Court promulgated an affirmative defense available to employers in vicarious liability sexual or racial harassment cases. Initially, for the defense to be available, the victimized employee must not have suffered a tangible employment action. *Faragher*, 524 U.S. at 807. If this is the case, then the employer must prove two elements to successfully maintain this defense: "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually (or racially) harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Id.*

### a.    Severe or Pervasive Harassment.

The initial issue concerns whether the harassment allegedly suffered by Townsend was both severe and pervasive under the law. The court is satisfied that there is a genuine issue of fact regarding whether Ms. Townsend subjectively perceived Burd's conduct to be sufficiently severe and pervasive to alter the terms or conditions of her employment. However, in order to survive summary judgment, the plaintiff must identify an issue of fact

15

as to whether the allegedly harassing conduct was objectively both severe and pervasive – whether a reasonable person would find it so.

In *Mendoza* and more recently in *Gupta,* the Eleventh Circuit thoroughly examined the standard by which conduct will or will be found both severe and pervasive.[10] In *Mendoza*, the plaintiff presented four "categories" of harassing behavior: (1) one incident where Mendoza's supervisor, Page, stated to her that he was "getting fired up;" (2) a single occasion where Page rubbed against Mendoza's hip while touching her shoulder and smiling; (3) two instances in which Page made a sniffing sound while looking at Mendoza's groin area and one instance of sniffing without looking at her groin; and (4) Page's "constant" following and staring at Mendoza in a "very obvious fashion." *Mendoza*, 195 F.3d at 1247.

Considering all the circumstances, the court concluded that the alleged conduct fell "well short of the level of either severe or pervasive conduct sufficient to alter Mendoza's terms or conditions of employment." *Id*. Initially, the court found that the statement "I'm getting fired up," made in the context in which Mendoza alleged, did not objectively constitute a sexual remark. Additionally, the conduct suffered by Mendoza was not considered to be physically threatening, humiliating, or severe, and did not interfere with Mendoza's job performance. In particular, the touching incident was described as "slight," and the negative effect of the constant staring and following was undermined by the fact that there was no allegation of such conduct outside the workplace, nor was it considered to be

---

[10] While both *Mendoza* and *Gupta* were sexual harassment cases, the court deems the reasoning in those cases also relevant to racial harassment claims.

16

comparable to stalking, leering, intimidating, or threatening. Lastly, because the conduct at issue occurred over an eleven-month period, the court found it "far too infrequent" to alter the conditions of the workplace. *Id.* at 1249.

In *Gupta,* the statements and conduct of the plaintiff's supervisor, Rhodd, which were arguably sexual in nature included the following: (1) on one occasion Rhodd commented to Gupta that she was "looking very beautiful"; (2) Rhodd's frequent phone calls to Gupta at her home; (3) an incident when found Rhodd in his office while wearing only an undershirt above the waist which he promptly tucked into his trousers; (4) Rhodd stared at her, touched her ring and bracelet once, and repeatedly asked her to lunch; and (5) one instance where Rhodd placed his hand on Gupta's knee, and another where he touched the hem of her dress. *Gupta*, 212 F.3d 571, 579-581.

The court examined each instance, and upon considering all the behavior and conduct of a sexually or gender related nature collectively, found that for summary judgment purposes, there was no genuine issue of material fact regarding whether the complained of conduct was objectively severe and pervasive. As for the "looking very beautiful" comment, the court dismissed it as either a simple compliment, or merely flirtatious conduct which did not constitute sexual harassment. *Id.* at 585; *See Oncale*, 523 U.S. at 81 (explaining that intersexual flirtation is part of ordinary socializing in the workplace and should not be mistaken for discriminatory conditions of employment). The court also determined that any claim relating to the incident regarding Rhodd tucking in his shirt was undermined by the finding that he had not made any corresponding gestures or comments. *Gupta*, 212 F.3d at 585. The court further described this event as an "isolated

17

occasion" in which the alleged conduct was not "physically threatening or humiliating." *Id.* Rhodd's staring, touching Gupta's hand and bracelet, and asking her to lunch were also found not to involve severe, threatening, or humiliating conduct. *Id.*

The court considered the two most serious incidents to be the phone calls and Rhodd's touching Gupta's knee and dress. While the court concluded that the phone conversations were frequent and annoying, they were not found to constitute severe or pervasive sexual harassment. *Id.* As for the touching incidents, that was deemed improper, but not sufficiently improper to create a question of fact as to the severity or pervasive nature of Rhodd's conduct. In particular, the court placed considerable emphasis on the fact that there were "only two incidents in a period of six or seven months during which they were interacting (out of an even longer period during which the two worked for the University)." *Id.* Each incident was consequently deemed momentary, and neither was determined to be coupled with any verbal suggestions or advances. *Id.; See Minor v. Ivy Tech State College*, 174 F.3d 855, 857 (7th Cir. 1999)(no hostile environment where the supervisor, among other things, on one occasion "put his arms around [the plaintiff], kissed her, squeezed her, and said, 'Now is this sexual harassment?'"). The court concluded that if it found Gupta's complaints to constitute sexual harassment, it would "lower the bar of Title VII to punish mere bothersome and uncomfortable conduct, and would trivialize true instances of sexual harassment." *Gupta*, 212 F.3d at 586.

Construing the evidence in the light most favorable to Townsend, she presented evidence of six categories of sexually harassing conduct: (1) one incident where Burd commented on Townsend's breasts, two comments concerning African-American attitudes

18

toward oral sex, and his frequent comments that she "looked pretty" and "smelled good;" (2) one instance where Burd licked his lips, touched Townsend's hips, and brushed his private parts against her and another instance where he brushed his crotch against her: (3) a single occasion where Burd pulled a towel from her back pocket; (4) a "couple of" occasions where Burd looked at Townsend and rolled his tongue and licked his lips and four or five instances where he winked at her; (5) Burd's comment to her and other female employees that if they would do what he wanted them to do, they could get what they wanted; and (6) an incident when Burd first kicked her then slapped her rear.

The court is not convinced that the comments concerning Townsend's looks and smell, the towel incident, and Burd's comment concerning employees acting in a particular way included the necessary sexual or gender-related connotations, nor are these instances sufficiently severe or pervasive to alter the terms or conditions of the plaintiff's employment. *See Gupta*, 212 F.3d at 585. In particular, like the "I'm fired up" statement in *Mendoza*, the circumstances surrounding the foregoing events do not objectively indicate the requisite connection to gender or sex.

However, even should the court disregard these incidents, limiting consideration to all the other events, the court is satisfied that there exists a genuine question of material fact regarding whether the conduct was both severe or pervasive. All of the incidents alleged by Townsend occurred over a relatively short period–approximately two weeks. Most reasonable persons would consider some of the incidents to be both physically threatening and humiliating. Burd allegedly licked his lips and rubbed plaintiff's breasts before "brushing" up against her. Also, while most comments concerning oral sex would be

19

considered humiliating, the questions posed to Townsend by Burd included language that would be particularly humiliating. Whether such threatening and humiliating language would interfere with the plaintiff's job performance is, in this case, an issue best left to a jury. A jury might well find that circumstances that forced Townsend to request to be assigned to another job location interfered with her job performance.

There also remains a genuine issue of fact regarding the severe and pervasive nature of the alleged racial harassment. Townsend claims that she heard Burd use the word "nigger" on at least five occasions, and describe African-Americans as "gangster people," "ghetto people," "drug dealers," and "monkeys." Included among these events were two occasions where Burd called Townsend a "nigger" and one occasion where he called a customer a "big, fat stupid nigger" in the presence of both the plaintiff and the customer. Considering all the circumstances, including the degrading, humiliating, and offensive nature of that word, the court finds a question of fact exists as to whether such conduct was sufficiently severe or pervasive to alter terms or conditions of Townsend's employment.[11]

### b. Applicability of the Affirmative Defense.

Despite the existence of factual questions concerning the severe and pervasive nature of both the alleged racial and sexual harassment, the defendant is still entitled to assert the so-called "*Faragher* defense." *Faragher*, 524 U.S. at 807. Hardee's can escape liability by demonstrating (a) that it took reasonable steps both to prevent sexual and racial

---

[11] As has been noted elsewhere, there is probably no more offensive or degrading word in the English language than is the "N" word. In a time when Western civilization has allowed itself to become so course and cheapened that radio and television personalities, movies stars, celebrities, and ordinarily citizens, young and old, regularly express themselves with vulgar references to the human anatomy, human excretory functions, and human sexuality, the "N" word, because of its power to degrade, humiliate, and to inflict emotional hurt, remains entirely unacceptable.

20

harassment and to remedy the harassing conduct promptly once it became known, and (b) that the victimized employee unreasonably failed to avoid the harm or to utilize the remedial opportunities made available by the employer. *Id*.

In the present matter, it is undisputed that Townsend complained about the alleged sexual harassment to the proper officials.[12] Consequently, it appears that she took advantage of the preventive or corrective opportunities provided by the defendant. Hardee's may, nevertheless, still prevail if it establishes that it took reasonable steps both to prevent the harassment and to remedy it once it became known. *Id.* The Supreme Court has implied that employers could prove they exercised reasonable care to prevent harassment by promulgating an anti-harassment policy. *Madray*, 208 F.3d at 1297-98. In addition, the employer must demonstrate that it disseminated the policy. *Id.*

The parties have presented the court with conflicting evidence concerning whether Hardee's disseminated a written anti-harassment policy. The plaintiff stated that she never received any such policy (Def. Ex. A p. 248). The defendant, on the other hand, has presented an "orientation checklist" signed by the plaintiff on which the space next to "employee handbook" has been checked. (Def. Ex. A). Normally, such conflicting evidence might create a genuine issue of fact. However, it is undisputed that, whether or not Townsend received a copy of the written policy, she learned of it and notified the proper management officials on April 28, 1998.

### c. Prompt and Effective Remedial Action.

---

[12] It is not entirely clear that she also complained about racial harassment.

21

The record evidence is undisputed that upon first learning of the plaintiff's harassment claim, Hardee's promptly transferred her, at her request, to another store where she suffered no further harassing conduct. Hardee's contends that it cannot be held liable for harassment when it has acted promptly and effectively to remedy that harassment. *See Steele v. Offshore Shipbuilding Co. Inc.*, 867 F.2d 1311, 1315 (11th Cir. 1989). The court agrees.[13] After careful consideration, the court is satisfied that the prompt and effective remedial action taken by Hardee's insulates it from liability. It would be contrary to Title VII's deterrent policy to impose vicarious liability against an employer when that employer has provided a prompt and effective response upon learning of the plaintiff's complaint. As stated in *Faragher*, the basis for holding an employer responsible for a supervisor's actions stems from the notion that the supervisor who creates a hostile environment is aided by his agency status with the employer in doing so. Where, as here, the employer promptly and effectively moves to remedy the situation, "it eradicates any semblance of authority the harasser might otherwise have possessed." *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258 , 266 (5th Cir. 1999), Weiner, J. concurring specially, 168 F.3d 795 (5th Cir. 1999).

## B.   Negligent Supervision.

The plaintiff alleges that under Alabama law, she may maintain a negligent supervision claim against Hardee's. *See Stevenson v. Precision Standard, Inc.*, 1999 WL 722691. *7 (Ala. Sept. 17, 1999). However, the court agrees with the defendant that the

---

[13] The plaintiff argues that the remedy was not effective because there is no evidence that Burd was not sufficiently disciplined following these events. While there are instances where the discipline imposed against the offending employee may be an issue in determining the effectiveness of the remedy, that cannot be the case where, as here, the plaintiff promptly received exactly the remedial action she sought and there is no question that she endured no further injury. The effectiveness of the remedy must focus on the relief provided the plaintiff and not on the punishment imposed against the offender.

Alabama Supreme Court has never recognized a negligent supervision claim premised upon a federal statutory cause of action. The alleged harassment is potentially actionable only under Title VII. *See id*. at *4 n.6. Accordingly, the motion for summary judgment as to the negligent supervision claim will be granted.

### C.      Other State Law Claims.

The plaintiff did not respond to defendant's arguments concerning claims of back pay, race retaliation, assault and battery, wrongful discharge and the tort of outrage. The court finds no genuine issues of fact exist to any of the foregoing claims and Hardee's motion for summary judgment as to such claims is due to be granted.

### V.      Conclusion.

By separate order, to be entered contemporaneously herewith, the defendants' motion for partial summary judgment will be granted in all respects. Accordingly, all claims, with the exception of plaintiff's sexual harassment retaliation claim, will be dismissed with prejudice.

Done, this _2/4t_ of September, 2000.

Edwin Nelson
United States District Judge

23